IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  17-cv-01364-KLM

SHAWN WILLIAM SCOTT,

      Plaintiff,

v.

JOE A. MONTOYA, Denver Police,
JODI BLAIR, Denver Sheriff,
DENNIS MCCORMICK, OIM Deputy, and
DR. CRUM, Primary Care Physician at Jail,

      Defendants.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on the **Motion to Dismiss** [#115][1] ("Denver Motion"),

filed by Defendants Joseph Montoya ("Montoya"), Jodi Blair ("Blair"), and Denis McCormick

("McCormick")[2] (collectively the "Denver Defendants"); and on the **Motion to Dismiss the**

**Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)** [#117] ("Crum's Motion"), filed by

Defendant Peter B. Crum, M.D. ("Crum") (collectively, the "Motions").[3]  Plaintiff, who is

_____

    [1]  "[#115]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF).  This convention is used throughout this Order.

    [2]  Defendants Montoya and McCormick are incorrectly identified in the Amended Complaint [#83] as "Joe A. Montoya" and "Dennis McCormick."  *Am. Compl.* [#83] at 1; *Denver Motion* [#115] at 1.

    [3]  This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties.  *See* [#32, #137, #140].

proceeding pro se,[4] filed Responses [#126, #141], and Defendants filed Replies [#128, #144]. The Court has reviewed the Motions, Responses, Replies, the entire case file, and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the Motions [#115, #117] are **GRANTED**.

## I. Summary of the Case

Plaintiff is currently an inmate with the Colorado Department of Corrections, but throughout the period relevant to this lawsuit he was a pretrial detainee at Van Cise-Simonet Denver Detention Center ("DDC") in the custody of the Denver County Sheriff's Department ("DSD"). *See Notice of Pl.'s Address Change* [#149]; *Am. Compl.* [#83] at 3; *Denver Motion* [#115] at 6. Plaintiff brings this lawsuit pursuant to 42 U.S.C. § 1983 alleging that Defendants[5] failed to properly investigate an assault he experienced while at DDC and that they failed to provide him adequate medical care following the assault. *Am. Compl.* [#83] at 2-6.

On March 5, 2017, while a pretrial detainee at DDC, Plaintiff alleges he was assaulted.[6] *Id.* at 4. As a result, Plaintiff alleges he "openly requested [an] invest[i]gation

---

[4] The Court must construe liberally the filings of pro se litigants. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)**.**

[5] The only remaining defendants in this case are the three Denver Defendants and Defendant Crum. *Response* [#141] at 1; *Response* [#126] at 1.

[6] For the purposes of resolving the Motions [#115, 117], the Court takes as true all well-pled, as opposed to conclusory, allegations made in Plaintiff's Amended Complaint [#83]. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

of [the] [a]ssault" and "filed several [g]rievance and [i]nternal [a]ffairs" complaints.  *Id.* at 3.

Although Plaintiff is not exceedingly clear on this point, Plaintiff alleges the assault was

ignored or overlooked by either "[Denver] [p]olice or [Denver] [s]heriff due to the lack of

investigation into it."  *Id.*  After exhausting his "[r]emed[ies] with [g]rievance[]s" asking DSD

to investigate the assault, Plaintiff alleges he received a follow up investigation from Denver

Police Sgt. Ryan McGinty ("McGinty") on May 12, 2017.  *Id.* at 4.  During the follow up with

Sgt. McGinty, Plaintiff was shown a video of the assault depicting his attacker as an

unidentified inmate.  *Id.*  Plaintiff alleges the purpose of the meeting with Sgt. McGinty was

to show that the department "did not violate [internal] pol[icy] [b]y not p[u]rsu[]ing charges."

*Id.*

Defendant Montoya, a Denver Police Department ("DPD") Internal affairs

Commander, was allegedly alerted to the assault by Plaintiff in May 19, 2017

correspondence.  *Id.* at 3.  Defendant Montoya instructed Plaintiff to follow up with the

Office of the Independent Monitor ("OIM").  *Id.* at 4.  Plaintiff further alleges he alerted

Defendant McCormick, a Deputy at OIM, of the assault on May 31, 2017.  *Id.*  As of

November 22, 2017, the date Plaintiff signed his Amended Complaint [#83], Plaintiff alleges

the assault was still "not charged or invest[i]gated."  *Id.*

On July 6, 2017, Plaintiff alleges he received a letter from Defendant Blair, a DSD

Internal Affairs Major, responding to Plaintiff's assault inquiries.  *Id.* at 5.  The letter,

according to Plaintiff, concluded that DSD "supported all action[s] [that] w[]ere taken to

provide [him] with [the] standard of care to address [his] concerns."  *Id.*  Plaintiff alleges the

standard of care followed by DSD was improper, because they failed to "invest[i]gate,

charge, or [d]o [m]edical."  *Id.*  Further, Plaintiff alleges the letter is evidence of a "cover up"

or "under cover [p]olice or [s]heriff[s]" at work because he "tried to address [this] issue via [g]rievance[]s and complaint, and [he] was still not [e]ver [q]uestion[ed]." *Id.*

Regarding his medical care, Plaintiff alleges Defendant Crum of DSD Primary Care lied about "follow up at [the] [h]ospital [that was] not [d]one, [a]nd [there was] [n]o MRI [done] for [his] spine." *Id.* at 6. Additionally, Plaintiff alleges Defendant Crum overcharged him by "$14.00 for follow-up for [h]earing [l]oss and [b]ack [p]ain." *Id.* at 6. Plaintiff also asserts he filed a "ton of [g]rievances to try to get proper medical care for [b]ack [p]ain." *Id.*

Plaintiff asserts three claims against the remaining Defendants for "[f]ailure to [i]nvest[i]gate [the] [a]ssault," "[f]ailure to [r]elease [i]nfo to [the] courts," and "[l]ack of [m]edical." *Id.* at 4-6. Liberally construed, Plaintiff claims, pursuant to 42 U.S.C. § 1983, that each of the Denver Defendants, in their individual and official capacities,[7] were deliberately indifferent to his health and safety in violation of Plaintiff's rights under the Fourteenth Amendment of the United States Constitution.[8] *See id.* at 3-6. Additionally, Plaintiff claims that each of the Denver Defendants violated his due process rights under the Fourteenth Amendment in failing to investigate his grievances regarding his assault and denying him access to court. *See id.* at 4-5. Plaintiff also claims that Defendant Crum acted with deliberate indifference to his medical needs, violating his rights under the Fourteenth Amendment. *Id.* at 6. Plaintiff seeks injunctive relief for an "MRI & [m]edical,"

---

[7] Plaintiff does not identify whether he sues Defendants in their individual or official capacities. However, the Court liberally construes Plaintiff's Amended Complaint [#83] to be asserting both. *See, e.g.*, *Patterson v. Santini*, No. 11-cv-01899-PAB-KLM, 2012 WL 3886877, at *7 (D. Colo. Mar. 28, 2012).

[8] Similarly, Plaintiff does not identify the precise constitutional amendment under which he asserts his claims, but the Court liberally construes his claims under the Fourteenth Amendment because he was a pretrial detainee at all times relevant to this lawsuit.

and "PTSD therapy."[9]  *Id.* at 8.  Additionally, Plaintiff seeks $310,433.40 in compensatory damages for "[l]ife long hearing loss [a]nd new[ly] increased [s]tress."  *Id.*

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994)  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations."  *Shero v.City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (internal quotation marks omitted).

The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer

---

[9] In his Amended Complaint [#83], Plaintiff also sought injunctive relief for a "[h]earing [a]id." *Id.* at 6.  Because this request has since been fulfilled, Plaintiff no longer seeks this request for relief.  *See Response* [#141] at 1; *Minute Order* [#156].

more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not shown that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 129 S. Ct. at 1950 (quotation marks and citation omitted).

## III. Analysis

Plaintiff asserts that Defendants violated his rights under what the Court construes to be the Fourteenth Amendment of the United States Constitution. *Am. Compl.* [#83] at 3-6. Defendant Crum argues the Court should analyze Plaintiff's claims under the Eighth Amendment. *Crum's Motion* [#117] at 4. However, as stated by the Denver Defendants, Plaintiff was a pretrial detainee at the time of the events underlying this lawsuit, and pretrial detainees are protected under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's proscription against cruel and unusual punishment. *Berry v. City of Muskogee*, 900 F.2d 1489, 1493 (10th Cir. 1990); *see also Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015); *Denver's Motion* [#115] at 6. "In determining whether [a pretrial detainee's] rights were violated, however, we apply an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983." *Perry v. Durborow*, 892 F.3d 1116, 1121 (10th Cir. 2018) (quoting *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)).[10]

---

[10]    The Tenth Circuit Court of Appeals, in a recent, unpublished opinion, has noted that circuit courts "are split on whether [*Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015),] alters the standard for conditions of confinement and inadequate medical care claims brought by pretrial detainees," with the Second, Seventh, and Ninth Circuits saying it has and with the Fifth, Eighth, and Eleventh Circuits saying it has not and that *Kingsley* applies only to excessive force claims. *Estate of Vallina v. Cty. of Teller Sheriff's Office*, __ F. App'x __, __, No. 17-1361, 2018 WL 6331595, at *2 (10th Cir. Dec. 4, 2018). The Tenth Circuit has not yet directly determined this issue. *See id.* However, given that (1) the parties have not raised this issue, (2) the Tenth Circuit's last published statement on the appropriate test indicates that the standard has not changed at this time, *see Perry v. Durborow*, 892 F.3d 1116, 1121 (10th Cir. 2018), and (3) Plaintiff's claims would fail under either standard, the Court proceeds on the basis that the Fourteenth and Eighth Amendment standards are identical for purposes of Plaintiff's claims. *See Estate of Vallina*, 2018

**A. Individual Capacity: Denver Defendants**

The Denver Defendants assert an entitlement to qualified immunity in their Motion, and thus the Court first examines Plaintiff's Amended Complaint [#83] pursuant to Fed. R. Civ. P. 12(b)(6). [#115] at 4; *Butler v. Rio Rancho Pub. Sch. Bd. of Educ.*, 341 F.3d 1197, 1200 (10th Cir. 2003) ("Since the [Defendant] raised the defense of qualified immunity in its motion to dismiss, we first examine whether [Plaintiff] asserted a violation of federal law in their complaint."). Qualified immunity, in certain circumstances, protects government officials from litigation when they are sued in their individual capacities. *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 814-18 (1982). "[G]overnment officials . . . generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. In their Motion, the Denver Defendants argue that Plaintiff has not sufficiently alleged a plausible violation of his constitutional rights. *See* [#115] at 6.

A government official is entitled to qualified immunity from liability for civil damages in his or her individual capacity when his or her allegedly unlawful conduct did not violate any of the plaintiff's statutory or constitutional rights that (1) were "clearly established" at the time of the conduct, and (2) would have been known to a reasonable person in the official's position. *Harlow*, 457 U.S. at 818 (stating that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that although qualified immunity determination involves a two-part inquiry,

WL 6331595, at *3.

if the plaintiff fails either inquiry reviewed in any order, no further analysis need be undertaken and qualified immunity is appropriate). The Supreme Court has stated that "[f]or executive officials in general . . . our cases make plain that qualified immunity represents the norm." *Id.* at 807. Thus, a government official is entitled to qualified immunity in "[a]ll but the most exceptional cases." *Harris v. Bd. of Educ. of Atlanta*, 105 F.3d 591, 595 (11th Cir. 1997).

As further explained below, the Court concludes that Plaintiff fails to state a cognizable constitutional violation against Defendants Blair, Montoya, or McCormick. Therefore, they are entitled to qualified immunity.

### 1.    Deliberate Indifference

Pretrial detainees are protected under the Fourteenth Amendment Due Process Clause. *Berry*, 900 F.2d at 1493. The Court liberally construes Plaintiff's Amended Complaint to assert deliberate indifference claims against the Denver Defendants. [#83] at 4-5. Prison officials must provide "humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Prison officials also have a duty "to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. However, this standard "does not impose constitutional liability on prison officials for every injury suffered by an inmate." *Id.* Plaintiffs must allege facts demonstrating both the objective and subjective prongs of deliberate indifference to bring a valid deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).

Under the objective prong, a prisoner must establish that the alleged injury or

deprivation is, objectively, "sufficiently serious." *Tafoya*, 516 F.3d at 916 (citing *Farmer*, 511 U.S. at 834). The prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. A medical need is sufficiently serious if "it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). "[I]t is the harm claimed by the prisoner that must be sufficiently serious to satisfy the objective component, and not solely 'the symptoms presented at the time the prison employee had contact with the prisoner.'" *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting *Mata v. Saiz*, 427 F.3d 745, 752-53 (10th Cir. 2005)).

Turning to the subjective prong, a prisoner must establish that the defendant prison official acted with a "sufficiently culpable state of mind" to violate the constitutional standard. *Tafoya*, 516 F.3d at 916. The prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety . . . ." *Farmer*, 511 U.S. at 837. The standard is subjective in that it requires that the prison official actually be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* This prong is equivalent to "criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of harm." *Beauclair v. Graves*, 227 F. App'x 773, 776 (10th Cir. 2007) (quoting *Mata*, 427 F.3d at 752).

Under the objective prong of deliberate indifference, Plaintiff alleges that the Denver Defendants "[f]ail[ed] to [i]nvestigate [his] [a]ssault" and "[f]ail[ed] to [r]elease [i]nfo to courts." *Am. Compl.* [#83] at 4-5. Construed liberally, Plaintiff alleges injury resulting from

DSD and DPD conducting an incomplete investigation into his assault, and thus that the Denver Defendants failed to protect him against future assaults, thereby demonstrating deliberate indifference to his health and safety. *Id.* at 3-6. The Court finds that these allegations fail to meet the objective prong to state a deliberate indifference claim.

To satisfy the objective component for the condition of his confinement, Plaintiff must allege sufficient facts to show he is incarcerated under conditions posing a substantial risk of serious harm. *Farmer*, 511 U.S. at 834; *Benefiled v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001). Suffering physical assaults in prison can be sufficiently serious to meet the objective prong of deliberate indifference. *See Benefiled*, 241 F.3d at 1271 (stating that "[s]uffering physical assaults while in prison is not 'part of the penalty that criminal offenders pay for their offenses against society'" (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981))). However, when inmates assert claims for failure to protect their health and safety relating to assaults, those claims are likely viable where "prison officials disregard repeated warnings of danger to a particular prisoner and continually refuse to make the situation safer." *Grimsley v. MacKay*, 93 F.3d 676, 681 (10th Cir. 1996). Examples include "either separating the prisoner from other inmates who previously have attacked him on multiple occasions or providing adequate safety apparatus on an obviously dangerous machine." *Id.* (internal citations omitted). In such situations, "prison officials have a constitutional duty to take reasonable measures to protect prisoners against current threat of attack and other sufficiently imminent dangers . . . likely to cause harm." *Id.* (quoting *Horton v. Cockrell*, 70 F.3d 397, 399 (5th Cir. 1995) (quotation marks omitted)). Further, deliberate indifference may be implicated not only with physical injury, but by the infliction of psychological injury. *Hudson v. McMillian*, 503 U.S. 1, 16-17 (1992) (Blackmun,

J., concurring in the judgment).

The facts alleged by Plaintiff here do not demonstrate a sufficiently serious risk to his health and safety prior to, or in the wake of, his assault. Plaintiff states no facts indicating a continuing threat of assault or threats of violence against him before or after his assault. *Am. Compl.* [#83] at 3-5. For example, no facts are alleged that he was placed in confinement with any detainee who previously attacked him. *Id.* Plaintiff also asserts the lack of assault investigation was part of a "cover up" by DSD and DPD officers. *Id.* at 3, 5. However, Plaintiff himself acknowledges he received multiple follow ups from DSD and DPD regarding investigation into his assault. *Id.* at 4,5. Further, Plaintiff fails to allege this "cover up" contributed to a future threat of violence against him. *Id.* at 3-5.

Here, there are simply no facts alleged that Plaintiff faced a current threat of attack or a "sufficiently imminent danger" likely to cause him harm after his initial assault. *Grimsley*, 93 F.3d at 681. Even construing Plaintiff's allegations of DSD and DPD involvement in a "cover up" as true, Plaintiff does not allege facts that he faced future danger from any inmate or DSD or DPD officer conduct. *Am. Compl.* [#83] at 3-6. Additionally, Plaintiff fails to allege any specific facts about his psychological state, evincing a state of fear about future attacks, to demonstrate a sufficiently serious condition. *Am. Compl.* [#83] at 3-5; *see Hudson*, 503 U.S. at 16-17 (Blackmun, J., concurring in the judgment). Thus, the Court finds that Plaintiff fails to properly allege facts to satisfy the objective prong of the deliberate indifference test with respect to the asserted incomplete investigation.

Because Plaintiff fails to meet the objective prong for a deliberate indifference claim against the Denver Defendants, the Court need not analyze the subjective prong. *See*

*Sealock*, 218 F.3d at 1209. Because the Denver Defendants are entitled to qualified immunity, the Denver Defendants' Motion [#115] is **granted** to the extent that Plaintiff's deliberate indifference claim asserted against them in their individual capacities is **dismissed with prejudice**. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

### 2. Due Process Claims

The Court liberally construes Plaintiff's claims of "[f]ailure to [i]nvest[i]gate [a]ssault" and "[f]ailure to [r]elease [i]nfo[r]mation to [c]ourts" as also asserting Fourteenth Amendment claims against the Denver Defendants for violating his due process rights. *Am. Compl.* [#83] at 4-5.

To state a Fourteenth Amendment due process claim, a plaintiff must allege facts supporting two elements. *See Veile v. Martinson*, 258 F.3d 1180, 1184-85 (10th Cir. 2001); *Sarno v. Reilly*, No. 12-cv-00280-REB-KLM, 2013 WL 1151818, at *6-7 (D. Colo. Jan. 17, 2013); *Obando v. Zavares*, No. 11-cv-01372-CMA-KLM, 2012 WL 5878209, at *18 (D. Colo. Oct. 30, 2012). First, he must allege that he possesses a protected liberty or property interest. *See Veile*, 258 F.3d at 1184-85; *Sarno*, 2013 WL 1151818, at *6-7. Second, he must allege that he was not afforded the appropriate level of process. *See Veile*, 258 F.3d at 1184-85; *Sarno*, 2013 WL 1151818, at *6-7.

Liberty interests "are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v.*

*Roth*, 408 U.S. 564, 577 (1972).  While "the constitutional rights that prisoners posses are more limited in scope than the constitutional rights held by individuals in society at large," *Shaw v. Murphy*, 532 U.S. 223, 228 (2001), this reality is tempered by the recognition that "[t]here is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974).  In considering whether Plaintiff's allegations trigger a liberty interest, the Court must examine the conditions of confinement before determining whether such conditions impose an atypical and significant hardship on the inmate.  *See Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006) (citing *Gaines v. Stenseng*, 292 F.3d 1222, 1225-26) (10th Cir. 2002).

### a.    Failure to Investigate

Plaintiff alleges that after he exhausted the remedies available to him to investigate his assault, he turned to Defendant Montoya at DSD and Defendant McCormick at OIM to investigate further.  *Am. Compl.* [#83] at 4.  Plaintiff asserts that lack of follow up from DSD and OIM and refusal to charge anyone for his assault demonstrate failure to properly investigate his grievances.  *Id.*  Further, Plaintiff alleges that Defendant Blair failed to apply the correct "standard of care" in looking at his grievances, contributing to the failure of DSD and DPD's investigation.  *Id.* at 5.

The Denver Defendants argue Plaintiff has failed to state any claim under the Fourteenth Amendment, because dissatisfaction with the results of the investigation into Plaintiff's assault does not rise to the level of a constitutional violation.  *Denver Motion* [#115] at 7; *see Sherratt v. Utah Dep't of Corr.*, 545 F. App'x 744, 747 (10th Cir. 2013).  The Court agrees.  "Denial of a grievance or failure to properly investigate or process grievances, without any connection to the violation of constitutional rights alleged by the

plaintiff, is not sufficient to establish personal participation for purposes of a Section 1983 claim." *Sherratt*, 545 F. App'x at 747 (citing *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009)). Given the Court's earlier dismissal of what the court construed to be a separate Fourteenth Amendment claim for deliberate indifference against the Denver Defendants, Plaintiff's failure to investigate claim would not be connected to any violation of constitutional rights. *Am. Compl.* [#83] at 4. Here, Plaintiff has alleged facts that he was unhappy with DSD and DPD's investigation into his assault. *Id.* at 4-5. Without more, dissatisfaction with the result of investigations or grievance requests are not sufficient to state a constitutional violation. *Sherratt*, 545 F. App'x at 747. Therefore, Plaintiff fails to allege sufficient facts to establish a protected liberty interest. The Court finds Plaintiff fails to establish a Fourteenth Amendment due process violation for failure to investigate his assault.

### b.    Lack of Access to Courts

The Court liberally construes Plaintiff's statement of "[f]ailure to [r]elease [i]nfo[rmation] to [c]ourts" as raising a lack of access to the courts due process claim. *Am. Comp.* [#83] at 5. Plaintiff alleges that the Denver Defendants, through Defendant Blair's July 6, 2017 letter, failed to apply the appropriate standard of care in investigating his grievances, demonstrating a "cover up" and an attempt to stifle his internal complaints. *Id.* at 5. Plaintiff states no facts regarding specific attempts to gain access to a specific hearing, process, or legal consultation. *See generally id.*

To raise a denial of access to court claim, Plaintiff must show that failure to apply the proper standard of care in reviewing his grievances and failing to investigate his assault "resulted in 'actual injury' by 'frustrating,' or 'hindering his efforts to pursue a nonfrivolous

legal claim.'" *Simkins v. Bruce*, 406 F.3d 1239, 1243 (10th Cir. 2005) (quoting *Lewis v. Casey*, 518 U.S. 343, 351-53 (1996) (internal brackets omitted)). Conclusory allegations of injury will not suffice. *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999); *cf. Simkins*, 406 F.3d at 1243-44 (recognizing a sufficient showing of actual injury where prisoner demonstrated specific impact on prosecution of a particular case).

Plaintiff fails to allege facts demonstrating denial of access to the courts. *Am. Compl.* [#83] at 5. Plaintiff produces no facts regarding injury or harm to his efforts pursuing a legal claim resulting from Defendant Blair's letter. *Id.* at 5; *Simkins*, 406 F.3d at 1243. Plaintiff relies on the mere allegation that he was "not ever [q]uestion[ed]" regarding his grievances. *Am. Compl.* [#83] at 5. This broad allegation alone is not enough to demonstrate actual injury hindering Plaintiff's efforts in pursuing legal action. *Simkins*, 406 F.3d at 1243.

In his Reply, Plaintiff raises new allegations that he was denied access to the courts "for months" to attempt to ensure filing of "charges" against his assailant. [#126] at 1-2. Even if the Court were to consider these allegations as part of Plaintiff's complaint, they are conclusory, and thus would not suffice in showing actual injury. *Cosco*, 195 F.3d at 1224. Therefore, Plaintiff fails to sufficiently allege he suffered actual injury to claim lack of access to the courts.

Finding that Plaintiff's due process claim does not rise to the level of a constitutional violation, the Court need not determine whether the "clearly established right" prong of the qualified immunity test is met. *Saucier*, 533 U.S. at 201. Because the Denver Defendants are entitled to qualified immunity, the Denver Defendants' Motion [#115] is **granted** to the extent that Plaintiff's due process claims asserted against them in their individual capacities

are **dismissed with prejudice**.  *See Brereton*, 434 F.3d at 1219.

**B.    Official Capacity: Denver Defendants**

The Court liberally construes Plaintiff's Amended Complaint [#83] to also allege that the Denver Defendants in their official capacities violated his rights under the Fourteenth Amendment.  *Am. Compl.* [#83] at 2-5.  The Denver Defendants argue that Plaintiff has failed to sufficiently allege official capacity claims.  *Denver Motion* [#115] at 11.

"An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works."  *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978).  To assert a municipal liability claim against the City and County of Denver, Plaintiff must allege that: (1) his constitutional rights were violated; and (2) a municipal policy or custom was the moving force behind the constitutional deprivation.  *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

The Court finds that Plaintiff has failed to alleged a constitutional violation relating to the actions of the Denver Defendants under the Fourteenth Amendment.  Therefore, because Plaintiff fails to allege a constitutional violation by the Denver Defendants, Plaintiff fails to meet the first prong of the municipality test and, accordingly, the Denver Defendants' Motion [#115] is **granted** to the extend that Plaintiff's official capacities claims against them are **dismissed with prejudice**.  *See Hicks v. Anderson*, No. 11-cv-00422-WJM-KMT, 2012 WL 1415338, at *7 (D. Colo. Jan. 23, 2012); *see also Brown*, 520 U.S. at 404; *see Brereton*, 434 F.3d at 1219.

**C.    Failure to State a Deliberate Indifference Claim Against Defendant Crum**

The Court construes Plaintiff's third claim for relief of "[l]ack of [m]edical" as a claim

alleging Defendant Crum's deliberate indifference to his serious medical needs. *Am. Compl.* [#83] at 6. Defendant Crum argues that Plaintiff has not alleged sufficient facts to state a plausible claim for relief, because Plaintiff fails to meet both the objective and subjective prong of deliberate indifference.[11] *Crum's Motion* [#117] at 2. The Court analyzes Plaintiff's claim according to the objective and subjective standards of deliberate medical indifference. *Martinez*, 563 F.3d at 1088.

## 1.    Objective Prong: Sufficiently Serious Condition

With respect to Defendant Crum, Plaintiff asserts that he meets the objective component of a deliberately indifferent claim based on the injuries resulting from an alleged assault on him on March 5, 2017. *See Am Compl.* [#83] at 7. Plaintiff alleges he suffered "[h]earing loss, [s]pinal [d]amage, and PTSD" in the wake of his assault. *Am. Compl.* [#83] at 3. Plaintiff also asserts he sought treatment for "back pain." *Am. Compl.* [#83] at 6. A medical need is sufficiently serious if "it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock*, 218 F.3d at 1209. Regardless, the Court here assumes, without deciding, that Plaintiff's alleged ailments are sufficiently serious to meet the objective prong, because, as discussed below, Plaintiff fails to allege sufficient facts regarding his medical treatment to meet the subjective prong of deliberate indifference. *See id.* (stating deliberate indifference "involves both an objective and subjective component").

## 2.    Subjective Prong: Deliberate Indifference

---

[11] Defendant Crum does not attempt to assert a defense of qualified immunity in response to Plaintiff's deliberate medical indifference claim. *See Crum's Motion* [#117] at 1-9. Therefore, the Court does not address the defense of qualified immunity with respect to Defendant Crum.

Under the subjective prong, the Court considers whether Defendant Crum acted with deliberate indifference. *See Farmer*, 511 U.S. at 837. In the medical context, neither negligence in diagnosis or treating a condition, nor medical malpractice rises to the level of deliberate indifference. *See Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997). Accordingly, a prisoner does not have a valid claim of deliberate indifference simply because he was denied a "particular course of treatment" that he desired. *Callahan*, 471 F.3d at 1160. "[A] prison doctor remains free to exercise his or her independent professional judgment," *ia.* (citing *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997)), and "[m]edical decisions that may be characterized as 'classic examples of matters for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview." *Id.* (citing *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)). An inmate's difference of opinion concerning the medical treatment that he receives does not generally support a claim for cruel and unusual punishment. *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993). A "prisoner's right is to medical care—not to the type or scope of medical care which he personally desires." *Henderson v. Sec'y of Corr.*, 518 F.2d 694, 695 (10th Cir. 1975).

Regarding Defendant Crum's actions, Plaintiff alleges Defendant Crum "neglected" his symptoms of hearing loss, spinal damage, and PTSD. *Am. Compl.* [#83] at 3. Plaintiff also alleges Defendant Crum "failed to follow [d]ischarge orders[,]" "lie[d] about follow up at [the] [h]ospital" that was never done, and failed to order an MRI for his spine. *Id.* at 6. Further, Plaintiff alleges Defendant Crum "over charged [him] $14.00 for follow[]up for [h]earing [l]oss" and failed to provide "medical care for [his] [b]ack [p]ain." *Id.*

Defendant Crum argues Plaintiff fails to alleges sufficient facts demonstrating he was

deliberately indifferent to Plaintiff's medical needs. *Crum's Motion* [#117] at 6. Specifically, Defendant Crum argues Plaintiff's allegations are conclusory, because Plaintiff does not allege any specific facts concerning any discharge orders, their content, when they were issued, or why Defendant Crum did not follow them. *Id.* at 6-7. Defendant Crum also argues that Plaintiff fails to establish Defendant Crum's conduct was anything more than "inadvertent," and fails to show Defendant Crum disregarded a substantial risk to Plaintiff. *Id.* at 7. The Court agrees.

Plaintiff fails to allege sufficient facts to demonstrate that Defendant Crum knew of any substantial risk of harm to Plaintiff, or that Defendant Crum disregarded that risk. *See Farmer*, 511 U.S. at 847. Plaintiff asserts Defendant Crum should have known about his risk to harm from a set of discharge orders, and in failing to follow them Defendant Crum disregarded that risk. *Am. Compl.* [#83] at 3, 6. Plaintiff, however, fails to allege that Defendant Crum knew of any discharge orders, let alone what the discharge orders advised him. *Id.* at 6. Given there are no facts alleged about what the discharge orders were, or when they were given to Defendant Crum, the Court cannot conclude that Defendant Crum disregarded them in his treatment of Plaintiff. Even if Plaintiff alleged sufficient facts stating Defendant Crum knew the details of the discharge orders, Plaintiff fails to allege that Defendant Crum drew an inference of harm from the discharge orders and deliberately ignored them rather than acted inadvertently. *Whitley*, 475 U.S. at 319; *Farmer*, 511 U.S. at 837.

Regarding Plaintiff's allegations that Defendant Crum lied about "follow up" at the hospital and failed to give Plaintiff an MRI, Plaintiff alleges no facts that Defendant Crum knew follow up or an MRI was required or mandated by Plaintiff's condition. *Am. Compl.*

[#83] at 6. Further, no facts are alleged that Defendant Crum chose to disregard any risks from Plaintiff's need for an MRI or follow up to Plaintiff's detriment. *Farmer*, 511 U.S. at 837.

In his Response, Plaintiff raises new allegations regarding his treatment and discharge orders issued to him. [#141] at 2. Plaintiff's allegations concerning failure to treat him with physical therapy and his desired medication do not appear in Plaintiff's Amended Complaint [#83]. Even if Plaintiff had alleged these facts in his Amended Complaint [#83], Plaintiff's allegations would still fail to state a claim. Plaintiff asserts the discharge orders were issued on March 4, 2018, by Dr. Jarrett and Dr. Lawless, both of whom are no longer parties to his lawsuit. *Id.* at 2. Plaintiff asserts these discharge orders dictated his "treatment," and that Defendant Crum knew his treatment mandated "physical therapy." *Id.* In connection with the discharge orders, Plaintiff also alleges Defendant Crum failed to follow them by withholding pain medication. *Id.* at 2-3. These allegations, without more, also fail to demonstrate the subjective prong of deliberate indifference. Outside of who wrote the discharge orders and when they were written, Plaintiff alleges no facts containing specific instructions in the discharge orders. *Id.* Further, Plaintiff fails to sufficiently allege that his allegations constitute anything more than a difference in opinion regarding appropriate medical care. *See Callahan*, 471 F.3d at 1160. Plaintiff desired different treatment, as he preferred physical therapy, an MRI, and one prescription for "Hydro-Codeine" instead of three other pain medications issued by Defendant Crum. *Reply* [#141] at 2-3. However, Plaintiff's desire for a particular course of treatment is insufficient to state a claim for deliberate indifference. *Callahan*, 471 F.3d at 1160. Additionally, Plaintiff concedes that he was treated with pain medication, demonstrating that Defendant

Crum did not disregard a risk presented by Plaintiff's condition. *Farmer*, 511 U.S. at 837. Therefore, the Court finds that Plaintiff fails to allege Defendant Crum's actions rise to the level of deliberate indifference in violation of the Fourteenth Amendment. *See Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006). Thus, Defendant Crum's Motion [#117] is **granted** and this claim is **dismissed without prejudice**. *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding that prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

## IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the Motions [#115, #117] are **GRANTED**, as outlined above.

IT IS FURTHER **ORDERED** that the Clerk of Court shall **CLOSE** this case.


Dated: February 15, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge